## No. 24.

STATE OF LOUISIANA EX REL. D. B. MARTIN VS. POLICE JURY OF CADDO PARISH.

Act No. 80 of the Legislature of 1876 is not unconstitutional on the score that the Board of Audit, created by it, is clothed with judicial powers. That body is only to sift and adjust the outstanding indebtedness of the Parish of Caddo, subject to the judicial action of the Courts.

Under the provisions of that Act, the finding of said Board constitutes the legal authority of the Police Jury of the Parish of Caddo to issue bonds.

Act No. 96 of 1872, which prescribed certain formalities for the valid issuance of the bonds of the Parish, was amended in that respect, by Act No. 15 of 1876.

The bonds held by the Relator having been issued under legal authority, are valid and to be treated as commercial paper in the hands of a BONA FIDE holder for value.

The Relator is, therefore, entitled to the Mandamus prayed for.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Boarman*, J.

Alexander & Blanchard for the Relator and Appellee.

First—The proceeding by way of mandamus is the proper one for the relief sought. High on Extraordinary Remedies, sections 139, 324, 369, 382, 392 ; Cooley on Taxation, pp. 524, 525 ; Dillon on Municipal Bonds, sections 24, 25 ; Dillon on Municipal Corporations, sections 685, 687, 688, 690 ; C. P. 829, *et seq.*

Second—The bonds were issued by authority of an enabling act of the Legislature. Act No. 96 of the Session Acts of 1872 (found upon page 12 of Acts of 1872) ; also Acts of 1876, pp. 34 and 124.

Third—They were issued for one of the purposes mentioned in the enabling acts, and by authority of the police jury acting under said acts.

Fourth—The provision of means for payment of the interest and principal, as contemplated by the statute, has been regularly made, and the parish has recognized the validity of the bonds every year, from the date of their issuance down to and including 1879, by annually paying the interest on them and part of the principal. She is now estopped from disputing their validity. Bigelow on Estoppel, pp. 584, 466 ; Daniels on Negotiable Instruments, p. 475, section 1545, and p. 476, section 1546 ; 5 Wall, 781.

Fifth—The parish, through its police juries, has ratified and confirmed, through a series of years, this issuance of bonds ; and the right to issue bonds being a corporate power of the parish, ratification can take place, and is equal to previous authority delegated to its agents for the purpose.   Angel & Ames, section 304 ; Dillon on Municipal Bonds, section 23 ; Dillon on Municipal Corporations, sections 383, 384, 385, 375, 91 ; 2 Kent. 291 ; Story on Agency, section 52 ; R. C. C. 2272 (second clause) ; City of New Orleans vs. Southern Bank, 31 A. 565 ; 29 A. 581 ; 28 A. 258 ; 26 A. 636 ; 25 A. 356 ; 12 A. 15 ; 4 A. 440 ; 5 Hill (N. Y.) R. 137 ; 8 Ohio St. 401 ; 34 Ill. 421.

Sixth—Relator, not being an original holder of the bonds, and being a *bona fide* holder for value before maturity and without notice, is unaffected by the defences urged against the bonds.   Daniels on Negotiable Instruments, vol. 1, section 812 ; Dillon on Municipal Bonds, section 7, p. 15 ; also note to section 8, p. 18 and authorities there cited ; Dillon on Municipal Corporations, vol. 1, p. 508, section 416 ; also section 905, *et seq.;*  Bigelow on Estoppel, p. 364 ; Central Law Journal for January, 1880, p. 72.

Looney & Elstner on same side.

Wise & Herndon for Defendants and Appellants.

First—Where an act of the Legislature authorizes the police jury of a parish to issue the bonds of the parish for certain purposes, the police jury must specially authorize the issue of the bonds, and in default of this action of the police jury, all bonds issued under color of said legislative act are invalid.   30 A. 287 ; 29 A. 590.

Second—Police juries have no power to contract debts or pecuniary liabilities without fully providing in the ordinance creating the debt the means of paying the principal and interest of the debts so contracted.   Revised Statutes, sec. 2786 ; 23 A. 191, 232, 251 ; 24 A. 457 ; 26 A. 59.

Third—Political corporations are not bound by the unauthorized acts of their agents, when the mandates of the latter are of record or embodied in a statute.   29 A. 590.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   This is an application for a *mandamus* to coerce the performance of an alleged ministerial duty which the defendants refuse to fulfill.   By act 96 of the General Assembly of 1872 (p. 12), the police jury of the parish of Caddo was, for certain objects expressed, authorized to issue bonds for a large amount, with the formal PROVISO, " that the ordinance of said police jury, making provision for the issue of bonds under this act, shall *not* have the effect of law, unless it shall

receive the unanimous vote of every member of said police jury of said parish of Caddo, and that said bonds, when issued, shall be counter-signed by each and every member of said police jury, which shall be evidence of the fact that the issuance of said bonds is unanimously approved by them."

By Sec. 2, provision is made for the payment of the accrued interest on the bonds, and for an annual curtailment of the capital, and the police jury is required, annually, to *determine a rate of taxation* on all taxable property in said parish, which would be sufficient to pay the interest and a portion of the debt, and the tax, as annually determined and ascertained, *is*, by said section 2, *levied* once for all upon all such property for the payment of the bonds and interest

By Sec. 3, provision is made for the retirement of the bonds so issued, by purchase from the lowest bidders by the police jury, out of funds raised by the tax and remaining in excess of the amount to be paid out semi-annually.

In April, 1876, the Legislature passed an act, (No. 15, p. 34), the object of which was "to amend and re-enact section one, of act 96, of 1872," and to authorize the police jury to issue bonds for a determined amount for purposes mentioned, one of which was the bonding of the debts due by the parish up to January 1, 1876. It was made the *duty* of said jury to issue the bonds to each and every holder of *valid* obligations due and payable by said parish on or before the date first mentioned; all laws inconsistent were repealed, and the act was to take effect from it passage.

Later in April, of the same year, the Legislature passed an act, No. 80, p. 124, to establish a board to audit outstanding obligations against the parish of Caddo, by which it is provided that the favorable report of the board, so created, on any claim, *shall be authority* for the police jury to issue bonds therefor. The act was to take effect from its passage.

The relator claims that he has acquired, in good faith, and in due course of business, 228 of the bonds issued by said police jury, aggregating $22,800, under the authority delegated to them by the two laws mentioned ; that the interest for the year 1879, and all years anterior, has been promptly paid by the parish of Caddo, but he complains that the police jury has neglected and refused to comply with the require-ment of section 3, of the act of 1872, as amended, which directs that it shall *determine* what rate of taxation, on the assessed value of all tax-able property, would be sufficient for the payment of the curtailment of the capital and of the interest for the year 1880, and that it shall levy, collect and apply the funds so raised to the satisfaction of the debt. He states, further, that there are no funds in the parochial treasury out of which the sums due on the bonds issued by said parish can be paid.

He charges a dereliction of ministerial duty on the part of the police jury, and asks, by *mandamus*, the enforcement of the same.

There was no objection to the form of the proceedings which is regular and proper.

The defendants return that the bonds are null and void and without effect, for the following reasons :

First. The bonds were not issued by authority of the police jury.

Second. *No ordinance was passed by the police jury authorizing the issue of said bonds and no ordinance was passed providing for the payment of the bonds.*

Third. The parish of Caddo was not legally indebted in any sum at the date of the bonds, and the board of audit, created by the act of 1876, was without power to determine the validity of alleged claims against the parish ; that the act is unconstitutional, in that it was an attempt, on the part of the Legislature, to create a judicial tribunal not provided for by the Constitution. The record contains the copy of two of the bonds claimed to have been issued under both acts. Each bond refers to the act by the authority of which it purports to have been uttered and is made payable *to bearer.* The bonds alleged to have been issued under the act of 1872, *refer* expressly to the *ordinance* of the police jury which authorized the issue, and is signed by the president and every member of that body. The bonds said to have been issued by the police jury, under the act of 1876, do not *refer* to any ordinance, and are signed by the president and clerk of the board only.

We think ourselves authorized to assume from the admissions of record, that all the averments of fact in the petition are true, with the exception of that which charges *pointedly* that the bonds were issued by the police jury.

All resistance to the pretensions of the relator, as holder of bonds uttered under the act of 1872, and previous to 1876, was formally abandoned, so that our investigation will be confined to the inquiry, whether the bonds issued under the act of the last named year *are or not valid.*

As we understand the case, the only objection urged against them is, after all, that no ordinance of the police jury was passed by that body to authorize the issue of the bonds, and no provision was made before, or at the time of such issue, for the redemption of these obligations ; and that, in consequence of the non-fulfillment of these formalities or requirements, which were conditions precedent, *sine quibus non,* the bonds are worthless.

We attach no importance to the charges that the parish was not indebted at the time the bonds were issued, and that the law creating the board of audit was unconstitutional for the reason set forth.

The evidence adduced proves that the parish was largely indebted,

and the act before us declares that it so was. The bonds were to be issued, under the law, to raise funds to build a " court-house, a jail, and other required public buildings," and to bond the debt. But were it true that the parish was not in embarrassment, it would be a matter of perfect indifference to these parties acquiring the bonds in good faith, in *market overt* and for value, which could, in no manner, invalidate or affect their rights under the same. Such a theory, as to innocent third persons holding commercial paper, would, if sanctioned, prove subversive of all the rules established by custom and law, and consecrated by unalloyed jurisprudence, emanating from the highest judicial authority, for the regulation of the intercourse of men, communities and nations in their financial relations. It cannot, therefore, for a moment be entertained.

The objection to the constitutionality of the law constituting the board of audit is bottomless. It is not true that the Legislature intended to create a body clothed with judicial powers so as to make it a component part of the judicial department, as organized by the Constitution. It had the power to create such a body, as it did, for the purpose of sifting and adjusting the outstanding indebtedness of the 'parish of Caddo, whose finding, however, on any portion of that indebtedness was not to be final and irrevocable, for the act distinctly provides, in as many words, that, in case of an unfavorable report by the board on any claim, the holder of such claim would *not be debarred* of his right to appeal to the courts to have the same established. The police jury itself *could*, had it thought proper to do so, in cases of doubt, have resisted any finding or report of the board of audit favorable to claims which it (the police jury) would have considered as invalid, although its members could not have been held responsible for submitting to such report, as the law provided that such report *would be, to them, authority to issue bonds therefor.*

It is now incumbent upon us to determine the sole question remaining for examination, as presented by the defendants; but before doing so, we premise that we consider that there exists a prior and fundamental question, which is really the pivot upon which this whole case turns, and which should necessarily be first determined. The question presented by the litigants is: Whether there was passed an ordinance justifying, before or after emission, the issue of the bonds?

The question which suggests itself to our mind is : *Was the adoption of such ordinance indispensably required for the validity of the issue of the bonds as a condition precedent sine quâ non ?*

As a determination of this last question, which, in reality, is the first and only one, is now highly proper, we will give it our immediate attention.

A reference to the proviso of section 1, of the act of 1872, shows that the passage of an ordinance to authorize the issue of the bonds was a condition *sine qua non* for their validity, for the bonds could *not* be issued unless such ordinance had been *previously* passed *unanimously* by the members of the police jury ; the law declaring in clear and emphatic language, not admitting of possible adverse construction, that the bonds, *in order to be valid,* shall have to be authorized by an ordinance, and that the ordinance *shall not have the effect of law*, unless unanimously adopted, the converse of the proposition being, that *after* an ordinance shall have been unanimously adopted by all the members composing the police jury, and *after* the signature of the bonds shall have taken place by the president and members of that body, to show such unanimous adoption, the ordinance *shall have effect of law*, and the bonds shall be valid and binding ; and that, *in the absence* of compliance with those prerequisites, the bonds *were not to be valid.* Hence, the reason why the ordinance was adopted and the bonds were signed, as it is admitted, and the record shows they were ; and hence, also, the reference on their face to the act of 1872 and to the police jury ordinance.

The Act of 1876, was passed "to amend and re-enact section 1, of the act of 1872," in which the *proviso* just considered is to be found; but in "amending and re-enacting" that section, the Legislature has left out entirely the *proviso*, dispensing, therefore, for the future, with the compliance of the ceremonies previously required as a condition precedent *sine quâ non* for the issue of other bonds, substituting to it the mere provision that the bonds, authorized by it to be issued, could be issued in the name of the parish by the president and clerk of the police jury. We find that the bonds issued under this law have been issued in that form. The question naturally here arises : Was the president of the police jury therefore authorized to issue *any* amount of bonds he might have thought proper up to the limit of $150,000 fixed by the law, at his whim or caprice, without any authority from the board composed of the police jurors, and would bonds so issued have been binding on the parish ?

Our answer to that serious objection, which is worthy of attention, is a very plain one, of very easy understanding, but the mere statement of which will suffice to show its correctness.

The authority to sign the bonds to be issued under the act of 1876 was not to be derived from the police jury, *but from the Board of Audit,* the law declaring *totidem verbis*, "that the favorable report of said board, on any claim, shall be *sufficient authority* for the police jury to issue any bonds therefor." The police jury is a body which cannot act by itself, but by its president, and, in this case, by its *clerk* besides; what-

1028

SUPREME COURT OF LOUISIANA,

State ex rel. Martin vs. Police Jury of Caddo Parish.

ever they did was the act of the police jury, under the circumstances of this case.

The evidence shows that the board of audit had reported favorably upon all the claims for which all the bonds issued by the president and clerk have been exchanged. It shows, also, that the bonds were endorsed by the president and by the clerk of the board of audit, which was apparently created to prove as a *check* on the police jury or its representatives, and their signature were required by section 2 of Act 80 of 1876. It shows, also, that a number of ordinances or resolutions was passed by the police jury which justified the issuing of the bonds in question. It is useless to enumerate those ordinances, as we consider that none was essentially necessary for the validity of the bonds.

From that standpoint, it becomes absolutely useless to examine the question of fact which the parties litigant have taken extraordinary pains to establish, and which was uselessly made a bone of contention between them.

The objections made by the defendants are not levelled, it is easily perceived, at the *power* of the police jury, or of its representatives, to issue the bonds, for the legislative authority required and essentially necessary for the purpose is unquestionable. The objections were aimed at the non-existence of any ordinance passed by the police jury anterior to the issuance of the bonds, and were to the effect that the bonds were consequently null and void. It is only where a municipal corporation has acted *ultra vires* in the issuing of bonds, that objections to their validity can be entertained. Finding, therefore, that ample legislative authority had been *previously* delegated, and that bonds have issued, bearing upon their face all the *indicia* showing compliance with legal exigencies, we arrive at the conclusion that the bonds in question are valid, and that the ministerial duty demanded must be performed. We will not assume to refer specially to the numberless and indisputable authorities which, as mile stones, justify entirely the views which we have expressed, and which are gathered in the late very useful work of Judge Dillon on Municipal Bonds, which comments *upon* this grave matter and which contains them all, up to the date of its publication.

The contract in existence between the bondholders and the parish of Caddo is protected from impairment by the Federal Constitution, and must be enforced.

We have been told, in argument, that the parochial scrips and evidences of indebtedness, for which these bonds were exchanged, were not obligatory in law, or conscience, upon the parish and its inhabitants ; that they were the scandalous offsprings, without any legitimate cause, of the authorities previously in power, who have issued the same for

the accomplishment of villainous and fraudulent purposes, which have in no · way enured to the benefit or advantage of the parish or its inhabitants. We can well lend, with tender sympathy, our personal, but must shut, with regret, our official ears to such complaints, coming as they do from a spoliated and tax-ridden community, as the Legislature of 1876 has sanctioned and legitimated those debts, and as the law otherwise closes the door to such investigation and determination, and does not permit us to grant the victims of bad government the relief which they seek at our hands. *Dura lex, sed lex.*

The judgment of the lower court was in favor of the relator. We find that it has granted him a relief to which he is entitled.

It is, therefore, ordered that the judgment appealed from be affirmed with costs.